**In re Valri D. ROEBEN.**

**No. 1:03–BK–12843 E.**

United States Bankruptcy Court,
E.D. Arkansas,
Northern Division.

June 23, 2003.

C. Richard Crockett, Little Rock, AR, for Debtor.

Waylan Cooper, for EMC.

David D. Coop, North Little Rock, AR, Standing Chapter 13 Trustee.

*MEMORANDUM OPINION DISMISS-ING CASE WITH PREJUDICE AND GRANTING, IN PART, EMC MORTGAGE CORPORATION'S MOTION FOR RELIEF IN REM FROM AUTOMATIC STAY*

AUDREY R. EVANS, Bankruptcy Judge.

On May 14, 2003, a hearing was held on the Objection to Claimed Exemptions, and the Objection to Confirmation of Plan and Motion to Dismiss filed by the Standing Chapter 13 Trustee on April 15, 2003, and the Motion for Relief *in rem* from Automatic Stay and Co–Debtor Stay, the Objection to Confirmation of Plan, and the Motion to Dismiss with Prejudice filed by EMC Mortgage Corporation ("EMC") on March 31, 2003. Appearances were entered by C. Richard Crockett, the Madden Law Firm, for Debtor Valri D. Roeben; Waylan Cooper, Wilson & Associates, for EMC; the Standing Chapter 13 Trustee, David Coop; and Mary Pruniski for the Chapter 13 Trustee. Neither Debtor nor Debtor's spouse, Richard Roeben, ("Spouse") was present. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (L), and the Court has jurisdiction to enter a final judgment in this case.

## I. *Factual Background*

According to court files and records, this is Debtor's or Spouse's sixth bankruptcy case within 6 years.[1] The procedural history of these cases is extensive. On September 28, 1998, Debtor and Spouse filed a petition, docket # 1:98–bk–10364, which was dismissed on September 13, 1999, for failure to comply with a court order.[2] Spouse filed a petition on October 15, 1999, docket # 1:99–bk–10423, which was dismissed on April 12, 2000, for failure to make payments. In that same order, Spouse was barred from filing a new petition for 180 days. Debtor filed another petition on August 3, 2000, docket # 1:00–bk–10259, which was dismissed on April 10, 2001, for failure to attend the 341(a) meetings of creditors. Spouse filed a subsequent petition outside the 180 day prohibition on June 12, 2001, docket # 1:01–bk–10361, which was dismissed on October 31, 2001. Debtor filed another petition on

1. The Court takes judicial notice of all documents in Debtor's current case, previously filed bankruptcy petitions, and all records in Spouse's previously filed bankruptcy cases. *See* Fed.R.Evid. 201; *In re Henderson,* 197 B.R. 147, 156 (Bankr.N.D.Ala.1996) ("The court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another court.") (citations omitted); *see also In re Penny,* 243 B.R. 720, 723 n. 2 (Bankr.W.D.Ark.2000).

2. According to the docket entries and records, Debtor was dismissed from this case for failure to attend, on two occasions, the first meeting of creditors. Therefore, her case was split from the above-cited case on or about January 20, 1999, and was docketed as # 1:99–bk–10022. It was closed on January 29, 1999.

February 8, 2002, docket # 02–bk–11463, which was dismissed on June 24, 2002, for failure to make payments. Debtor filed the case now at bar on March 10, 2003. Although Debtor listed Spouse as a co-debtor on Schedule H, he is not a party to the current proceeding as a joint debtor.

Each of Debtor's and Spouse's petitions lists one parcel of real property located at 3304 Case Ford Road, Heber Springs, Arkansas as part of the bankruptcy estate ("**Heber Springs Property**"). EMC is the successor in interest to United Companies Lending Corporation,[3] the original payee of a promissory note in the amount of $354,400.00 secured by a mortgage on the Heber Springs Property. Debtor and Spouse signed these instruments in October 1997 and are co-obligors. At the time Debtor and Spouse signed these instruments, the monthly payment amount was to be $3,241.84 Their first payment on the note was due in December 1997. Debtor and Spouse are currently in default on these instruments. EMC has been attempting to foreclose on the Heber Springs Property since at least early 2000, but has been unable to proceed due to the repeated bankruptcy filings by Debtor, Spouse, or both. It appears from a review of the files in these cases, neither Debtor nor Spouse has ever made payments into any of their proposed plans.

Debtor stated, under penalty of perjury, on her current petition that she had not filed any bankruptcy cases within the preceding six years. Debtor subsequently amended the petition to disclose her previously filed bankruptcy cases. No explanation was provided to the Court for the initial failure to disclose her previously filed bankruptcy cases. A review of these past cases also indicates that on multiple occasions, Debtor or Spouse has failed to appear for 341(a) meetings, alleging un-specified illness, flu, surgery, or an out-of-state job interview. Debtor failed to appear at the 341(a) meetings on two occasions in case # 1:98–bk–10364, and her case was dismissed. Debtor failed to appear at the 341(a) meetings on two occasions in case # 1:00–bk–10259, alleging medical reasons and flu. Spouse failed to appear at the 341(a) meetings on two occasions in case # 1:01–bk–10361, alleging illness and an out-of-state job interview. Debtor again failed to appear at the 341(a) meetings on two occasions in case # 02–bk–11463, alleging insufficient recovery from surgery and unspecified illness.

Debtor again used the excuse of unspecified illness for not appearing at this hearing. According to Debtor's Counsel, Spouse informed him that Debtor could not come to the telephone to discuss this matter since she was ill. Additionally, over the course of these filings, two attorneys who had previously represented Debtor and Spouse withdrew. One attorney cited misrepresentation of facts by Debtor and Spouse which interfered with the attorney-client relationship in her Motion to be relieved as counsel. At the hearing in the instant case, Debtor's Counsel did not oppose any of the motions, nor did he contest the facts stated therein.

For its part, EMC requests, in sum, that (1) Debtor's case be dismissed with prejudice, (2) the Court use its authority under 11 U.S.C. § 105 to prevent Debtor and co-debtor Spouse from refiling a bankruptcy case under any chapter without prior permission from the Court, (3) EMC be granted relief *in rem* from the automatic stay, and (4) under this *in rem* order, neither Debtor nor any other person or entity claiming an interest in the property be allowed to file another bankruptcy case which includes EMC or its successors, as a

---

**3.** Hereinafter all references to EMC include United Companies Lending Corporation.

creditor. The Court will address these requests in turn. .

## II. Dismissal of the Instant Case for Cause.

██ Chapter 13 petitions may be dismissed or converted "for cause" under 11 U.S.C. § 1307(c), and such cause includes the filing of a petition in bad faith. *In re Ladika,* 215 B.R. 720, 725 (8th Cir. BAP 1998). The determination of bad faith "focuses on the totality of the circumstances, specifically: (1) whether the debtor has stated his debts and expenses accurately; (2) whether he has made any fraudulent representation to mislead the bankruptcy court; or (3) whether he has unfairly manipulated the bankruptcy code." *Id.* (citing *In re LeMaire,* 898 F.2d 1346, 1349 (8th Cir.1990)).

██ Serial filing should be weighed as a factor in determining bad faith under the totality of the circumstances. *See In re LeGree,* 285 B.R. 615, 618–19 (Bankr. E.D.Pa.2002). "The filing of successive petitions in bankruptcy ... may be indicia of a bad faith filing where there is no bona fide change in circumstances that justify the multiple filing or where the subsequent filing was designed to frustrate statutory requirements and abuse the bankruptcy process." *In re Coones Ranch, Inc.,* 138 B.R. 251, 258 (Bankr.D.S.D.1991). Factors that courts consider in making this assessment include "the length of time between petitions, whether the filing was made to induce the automatic stay, the debtor's efforts to comply with a previously confirmed plan, and whether a debtor is making multiple attempts at a fresh start." *Id. See also LeGree,* 285 B.R. at 618–19.

██ Debtor and Spouse have an interest in the Heber Springs Property on which they are joint obligors and have filed sequential bankruptcy petitions covering this property. Their multiple filings under these circumstances are evidence that they are engaged in the abuse of the bankruptcy process. *See In re Hutter,* 221 B.R. 632, 637 (Bankr.D.Conn.1998) (noting that suspicion of abuse of the bankruptcy process may arise where husband and wife, who have an interest in property on which they are joint obligors, file sequential bankruptcy proceedings). Moreover, there is no evidence of any change in Debtor's or Spouse's circumstances between any of their numerous bankruptcy filings. Under the totality of the circumstances, the Court considers (1) Debtor's lack of candor in not initially being forthcoming with the number of bankruptcy cases previously filed, (2) the sheer number of petitions filed by Debtor or Spouse within the previous six years in light of their joint obligations under the mortgage and promissory note, (3) the lack of evidence of changed circumstances between any of the filings, and (4) Debtor's failure to prosecute adequately this or any previous bankruptcy case, as demonstrated by her dismissals and failures to appear. *See In re Armwood,* 175 B.R. 779, 787 (Bankr. N.D.Ga.1994) ("When debtors utterly fail to perform or to prosecute a Chapter 13 case, with no *meritorious* reasons, the usual result is a dismissal at the hearing set for confirmation of the plan.") (emphasis in original).

In light of the foregoing facts and analysis, it is clear the purpose behind the instant filing is not to obtain a "fresh start," but rather simply to frustrate EMC's efforts to foreclose on the Heber Springs Property. This constitutes an abuse of the bankruptcy process. The Court therefore finds that this case has been filed in bad faith and should be dismissed with prejudice. Given the Debtor's persistent abuse of the Bankruptcy Code, the Court finds it necessary to employ its equitable powers under 11 U.S.C. § 105(a)

846

to bar Debtor from filing for bankruptcy for three years, unless Debtor first seeks and receives Court approval for filing a bankruptcy petition during this period.

### III. Prospective Relief Pertaining to Spouse and the Heber Springs Property.

Other more difficult questions arise under EMC's requests that Spouse be barred from filing for bankruptcy and that EMC be granted relief *in rem* from the automatic stay such that neither Debtor nor any other person or entity claiming an interest in the property be allowed to file another bankruptcy case which includes EMC, or its successors, as a creditor. The request for injunctive relief raises procedural questions, while the request for an *in rem* order binding parties not before the Court raises due process concerns. The Court will address each in turn.

The procedural issue here is whether EMC's request to enjoin Spouse from filing further bankruptcy cases can be granted on motion. Federal Rule of Bankruptcy Procedure 7001(7) states that, subject to exceptions not relevant in this case, a proceeding to obtain an injunction or equitable relief constitutes an adversary proceeding. Since EMC seeks injunctive relief barring a nondebtor spouse from further bankruptcy filings, this necessitates the commencement of·an adversary proceeding joining Spouse. *See In re Graham*, No. 98–11990DWS, 1998 WL 473051, at *1 (Bankr.E.D.Pa.1998). As the court in *In re Graham* stated "[a] Motion is a procedurally defective vehicle to secure the requested [injunctive] relief against [non-

debtor] Spouse." *Id.* (citations omitted). *See also In re Yimam*, 214 B.R. 463, 464 (Bankr.D.Md.1997). Accordingly, EMC's request that Spouse be enjoined from filing further bankruptcy proceedings will be denied.[4]

EMC's request for an *in rem* order raises due process concerns under the Fifth Amendment to the United States Constitution. The Fifth Amendment provides, in part, that no person shall be deprived "of life, liberty or property without due process of law ...." U.S. Const. amend. V. In any proceeding where one of these interests is at stake, reasonable notice and an opportunity to be heard are fundamental. *In re Fernandez*, 212 B.R. 361, 369 (Bankr.C.D.Cal.1997) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). Here, an *in rem* order would affect Spouse's interest in the Heber Springs Property, and he is not a party to this proceeding. Therefore, the Court must analyze the nature of *in rem* orders and whether, under these facts, such an order can be effective as to Spouse without violating constitutional norms.

Orders which attach to property and not persons are commonly referred to as *in rem* orders. *Graham*, 1998 WL 473051, at *2 (citations omitted). "These orders are grounded in the bankruptcy court's jurisdiction over a *res* which is property of the estate and are not intended to be affected by subsequent bankruptcy filings by the debtor or third party transferees." *Id. In rem* orders are responses to serial filing involving more than one debtor with an interest in property

---

4. EMC's request for an order such that neither Debtor nor any other person or entity claiming an interest in the property be allowed to file another bankruptcy case which includes EMC, or its successors, as a creditor, is overbroad. However, the Court will con-

sider whether an order burdening the Heber Springs Property is appropriate, since that property is part of the bankruptcy estate and is properly within the jurisdiction of this Court.

that the debtors are seeking to protect from foreclosure proceedings. *Id.* (citation omitted). These orders are an extraordinary form of relief and are appropriate when "an ordinary relief from stay order will not be effective, as demonstrated by the prior history of the parties and the property." *Id.* (citation omitted).

Some courts have reasoned that since *in rem* orders are based on the court's jurisdiction over the property of the bankruptcy estate, the co-owners or transferees need not be subject to the court's jurisdiction. *Id.* (declining, however, to issue *in rem* order due to factual insufficiency); *see also Yimam,* 214 B.R. at 466 (finding that bankruptcy court has power under 11 U.S.C. § 105(a) to issue *in rem* order binding nonparty spouse and providing that automatic stay would not extend to residence under future bankruptcy filings after a total of seven filings by debtor and spouse). Other courts have refused to issue such *in rem* orders binding nonparty co-owners on due process grounds resting primarily on lack of notice in the absence of an adversary proceeding. *See In re Snow,* 201 B.R. 968, 977 (Bankr.C.D.Cal. 1996) (finding that unless co-owners served with summons and complaint properly bringing them before court with notice and opportunity to be heard that court could not enter order granting creditor's request to relieve it from any future automatic stay resulting from the filing of a bankruptcy petition by any co-owners of the property); *In re Chappelle,* No. 99–02287, 2000 WL 33529765, at *2 (Bankr.D.D.C.2000) ("Although this court believes it has the power to issue such *in rem* orders, the court believes that an adversary proceeding is necessary to accomplish such an order, except with respect to the debtor's own interest in the property.")

An illustrative case, factually similar to the one now before this Court, is *In re Yimam.* That court faced a situation where due to the debtor's and her spouse's seven bankruptcy filings, they were able to keep their residence for more than five years without a mortgage payment. *Yimam,* 214 B.R. at 465. Although the nondebtor spouse was not a party to the case, the court invoked its equitable power under § 105(a) to prevent a continued abuse of the bankruptcy code and created an equitable servitude whereby the filing of a new bankruptcy petition by debtor or her spouse within a certain period of time would not extend the protection of the automatic stay to the property at issue and would not interfere with any foreclosure proceeding then pending or thereafter filed. *Id.* at 466–467. *See also Fernandez,* 212 B.R. at 371 (finding court had the power to enforce against debtor, despite lack of actual notice to debtor, an *in rem* order which was entered in prior bankruptcy case of debtor's joint tenant, since "common sense and equitable principles suggest ... that the authority granted by § 105(a) in appropriate circumstances may override the need for notice and a hearing where necessary to protect the integrity of the bankruptcy process.")

█ In this case, the Court is faced with six bankruptcy filings since 1998 by a husband and wife where each case has been dismissed due to their inaction. They have kept foreclosure proceedings in abeyance since at least 2000 through repeated filings, and they are not making mortgage payments. They have made excuse after excuse for their failures to appear at 341(a) meetings and before the Court. The Court finds that Debtor and Spouse have engaged in a pattern of gross abuse of the Bankruptcy Code. The prior history of Debtor and Spouse in their effort to retain the property demonstrates that an ordinary relief from stay order will not be effective. Moreover, although

Spouse was not joined as a party, the pleadings and documents in this case indicate that he was separately mailed a notice of these proceedings.

In light of all of the above, the Court finds that Debtor and Spouse acted in concert to abuse the automatic stay provisions of the Bankruptcy Code and charges Spouse with constructive notice of this proceeding. Imputing knowledge or conduct from one person to another in bankruptcy proceedings is not novel. *See, e.g., In re Felberman,* 196 B.R. 678, 684–85 (Bankr. S.D.N.Y.1995) (imputing knowledge of prior court order to debtor through counsel who represented debtor and her spouse); *In re Ouverson,* 79 B.R. 830, 833 (Bankr. N.D.Iowa 1987) (finding husband and wife to be one entity due to concerted, repeated efforts to frustrate foreclosure through multiple filings); *In re Kinney,* 51 B.R. 840, 845 (Bankr.C.D.Cal.1985) (imputing actions of each family member to rest of family due to unity of interest and concert of action where eight of ten bankruptcy cases were filed by different members of same family to obtain automatic stay). Moreover, since the Heber Springs Property is part of the bankruptcy estate, the Court finds it has jurisdiction over that property sufficient to enter an *in rem* order. The Court also finds these particular facts warrant the Court's exercise of authority under 11 U.S.C. § 105(a) to override the need for formal service of process on Spouse, as would be required in an adversary proceeding, in order to protect the integrity of the bankruptcy process. *See Fernandez,* 212 B.R. at 371; *Yimam,* 214 B.R. at 466–67.

Accordingly, under these extraordinary circumstances, the Court will grant EMC's request for an *in rem* order for the reasons articulated above. This Court is sensitive to questions of due process and does not make such findings lightly or without a careful examination of the record in this proceeding and all prior related cases. Moreover, this Court notes that had an adversary proceeding been filed joining Spouse as a party, no questions of due process or procedural defects would have been at issue. In fact, the Court cannot emphasize strongly enough that this decision finding that Spouse had constructive notice is a narrow one, and it rests on the egregious abuses of the Bankruptcy Code as detailed above. In future cases, this Court will not be inclined to impute such notice to nondebtor spouse co-owners of property who have not been joined in an adversary proceeding, absent collusion and flagrant abuses of the Bankruptcy Code. Nonetheless, to proceed in any other manner in this situation, given the remarkable abuse by this Debtor and Spouse, would allow "the bankruptcy process to become a farce and parties pursuing legitimate interests before the court will be put to a seemingly endless round of motions, petitions, and more motions, based solely on a Lewis Carroll view of the workings of the automatic stay and due process." *Fernandez,* 212 B.R. at 371.

## IV. Conclusion

As a remedy for conduct similar to that outlined above, courts have imposed *in rem* orders that have operated as equitable servitudes on property, binding debtors and their successors in interest. *Snow,* 201 B.R. at 974–76; *Yimam,* 214 B.R. at 466–67. The Court will enter an Order providing that the filing of a future bankruptcy petition by any individual or entity will not extend the protection of the automatic stay of 11 U.S.C. § 362(a) to the Heber Springs Property for a period of six (6) months from the date of entry of this Order. This Court will not engage in a lengthy exposition on the proper title of this Order under terminology of real property law, since "[w]hether what the court

imposes is called an equitable servitude, a covenant running with the land, or a restraint on alienation, the result will be the same-the prohibition of any bankruptcy filing that will impose the automatic stay [an additional time] as to the subject real property." *Yimam*, 214 B.R. at 466. To provide notice to any individual or entity that may have or may obtain an interest in the Heber Springs Property within the next six (6) months, the Court will direct that this Order be recorded in the land records for Cleburne County, Arkansas. A separate Order consistent with this Opinion will be entered.

### ORDER DISMISSING CASE WITH PREJUDICE AND GRANTING, IN PART, EMC MORTGAGE CORPORATION'S MOTION FOR RELIEF IN REM FROM AUTOMATIC STAY

On May 14, 2003, a hearing was held on the Objection to Claimed Exemptions, and the Objection to Confirmation of Plan and Motion to Dismiss filed by the Standing Chapter 13 Trustee on April 15, 2003, and the Motion for Relief *in rem* from Automatic Stay and Co–Debtor Stay, the Objection to Confirmation of Plan, and the Motion to Dismiss with Prejudice filed by EMC Mortgage Corporation ("**EMC**") on March 31, 2003. Appearances were entered by C. Richard Crockett, the Madden Law Firm, for Debtor Valri D. Roeben; Waylan Cooper, Wilson & Associates, for EMC; the Standing Chapter 13 Trustee, David Coop; and Mary Pruniski for the Chapter 13 Trustee. Neither Debtor nor Debtor's spouse, Richard Roeben, ("**Spouse**") was present. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (L), and the Court has jurisdiction to enter a final judgment in this case. In accordance with the Memorandum Opinion previously entered in this case, it is hereby

**ORDERED** that EMC's Motion for Relief *in rem* from Automatic Stay and Co–Debtor Stay is **GRANTED, IN PART, AND DENIED, IN PART**. The Motion is **GRANTED** as to EMC's request for an *in rem* order on the property designated in the Memorandum Opinion as the Heber Springs Property. EMC is therefore entitled to initiate foreclosure proceedings immediately against the Heber Springs Property securing the mortgage and promissory note in this case. Furthermore, the filing of a future bankruptcy petition by any individual or entity will not extend the protection of the automatic stay of 11 U.S.C. § 362(a) to the Heber Springs Property for a period of six (6) months from the date of entry of this Order. EMC's Motion for Relief *in rem* from Automatic Stay is **DENIED** as to EMC's request to prohibit any person or entity with an interest in the Heber Springs Property from filing additional petitions in bankruptcy listing EMC as a creditor. It is also

**ORDERED** that EMC cause this Order to be properly recorded in the land records for Cleburne County, Arkansas to provide notice to any individual or entity that may have or may obtain an interest in the Heber Springs Property in the next six (6) months. It is also

**ORDERED** that Federal Rule of Bankruptcy Procedure 4001(a)(3) does not apply in this case, thus permitting EMC to immediately enforce and implement this Order granting relief *in rem* from the automatic stay. It is also

**ORDERED** that EMC's Motion to Dismiss with Prejudice is **GRANTED, IN PART, AND DENIED IN PART**. The Motion is **GRANTED** to the extent that this case is hereby dismissed, and Debtor is prohibited from filing a petition under any chapter of the Bankruptcy Code for a period of three (3) years from the date of

entry of this Order, unless Debtor first seeks and receives Court approval for filing a bankruptcy petition during this period. EMC's Motion to Dismiss with Prejudice is **DENIED** as to EMC's request to prohibit Spouse from refiling a bankruptcy case under any chapter of the Bankruptcy Code. It is also

**ORDERED** that EMC's Objection to Confirmation is **MOOT**. It is also

**ORDERED** that the Objection to Claimed Exemptions and the Objection to Confirmation of Plan and Motion to Dismiss, all filed by the Standing Chapter 13 Trustee, are **MOOT**.

**IT IS SO ORDERED.**